**Opinion filed March 22, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00176-CV

_____

## ABILENE DIAGNOSTIC CLINIC, PLLC, Appellant

## V.

## PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER, CHARTERED AND PAULA CALIMAFDE, Appellees

### On Appeal from the 104th District Court

### Taylor County, Texas

### Trial Court Cause No. 24718-B

### O P I N I O N

In this interlocutory appeal, Abilene Diagnostic Clinic, PLLC challenges the trial court's order sustaining appellees' special appearance. We affirm.

Abilene Diagnostic is a Texas limited liability company with its principal place of business in Taylor County, Texas. Two of Abilene Diagnostic's physician shareholders wanted defined benefit plans created in order for them to save more money for retirement and enjoy significant tax advantages. James Watson, an agent for Actuarial Data, Inc., recommended Actuarial Data to Abilene Diagnostic as the company best suited to design the benefit plans for

its clinic. Watson is a Texas resident, and Actuarial Data is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. Actuarial Data chose Paula Calimafde from the law firm of Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered as the attorney to design and prepare the defined benefit plans. Calimafde is a Maryland resident and is licensed to practice law in Maryland and the District of Columbia. Paley Rothman is a Maryland corporation with its only office in Maryland. Appellees prepared the benefit plans as requested by Actuarial Data. Actuarial Data reviewed and approved the plans prior to submitting the plans to Abilene Diagnostic for execution.

Abilene Diagnostic sued appellees, as well as Actuarial Data, Inc.; Actuarial Business Solutions, LLC; Charles W. Day III; and James Watson for negligence, malpractice, and negligent misrepresentation based on alleged drafting errors in the defined benefit plans. Appellees filed a special appearance asserting that Texas courts lacked personal jurisdiction. The trial court sustained appellees' special appearance. Abilene Diagnostic appeals and asserts in a single issue that the trial court has specific personal jurisdiction over appellees. Actuarial Data, Actuarial Business Solutions, Day, and Watson did not challenge the trial court's personal jurisdiction and are not parties to this appeal.

Whether a trial court has personal jurisdiction over a defendant is a matter of law and is reviewed de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "When [as here] a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *Id.* at 795.

A Texas court may exercise personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (West 2008); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software*, 83 S.W.3d at 793. Once the plaintiff satisfies this burden, the burden shifts to the nonresident defendant to negate all bases for personal jurisdiction alleged by the plaintiff. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

The Texas long-arm statute gives Texas courts the power to exercise personal jurisdiction over a nonresident defendant who does business in Texas. Section 17.042. The statute provides a list of activities that constitute doing business in Texas; however, the list is not exhaustive. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). The broad language of the statute extends personal jurisdiction "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum-contacts analysis requires that a defendant "purposefully avail[]" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The "touchstone" of due process analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three parts to a "purposeful availment" inquiry: (1) only the defendant's contacts with the forum are relevant; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must have sought some benefit, advantage, or profit by availing itself of jurisdiction. *Moki Mac*, 221 S.W.3d at 575; *Michiana*, 168 S.W.3d at 785.

The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Jurisdiction is premised on notions of implied consent that, by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there. *Michiana*, 168 S.W.3d at 785. The quality and nature of the defendant's contacts with the forum state, rather than their number, are important in analyzing minimum contacts. *Am. Type Culture Collection*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 230 n.11.

A defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795–96; *Guardian Royal*, 815 S.W.2d at 227–28.

Abilene Diagnostic has only asserted that the trial court has specific jurisdiction over appellees. Therefore, general jurisdiction is not an issue in this appeal.

Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum state. *Moki Mac*, 221 S.W.3d at 575–76 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)). When specific jurisdiction is asserted, the minimum-contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. The focus is not on where the injury was felt, but on the defendant's conduct and connections with the forum state in relation to the alleged liability. *Michiana*, 168 S.W.3d at 788–90.

Abilene Diagnostic alleged in its first amended petition that the trial court had personal jurisdiction over the parties based on the fact that the parties all did business with Abilene Diagnostic and "purposefully availed themselves of the benefits of Texas law by doing business with a Texas entity." As to Paley Rothman and Calimafde specifically, Abilene Diagnostic alleged that they drafted three defined benefit plans for Abilene Diagnostic and its employees; obtained a power of attorney from Abilene Diagnostic; prepared and filed forms on behalf of Abilene Diagnostic and the benefit plans; drafted amendments to the plans; prepared resolutions to implement the plans and the amendments; secured IRS determination letters on Abilene Diagnostic's behalf; communicated with the IRS regarding the plans; communicated with Dr. Crumbliss of Abilene Diagnostic regarding the details and problems of the benefit plans; worked with Abilene Diagnostic's ERISA lawyer to correct the problems; and received payment from Abilene Diagnostic in connection with these services.

In support of appellees' special appearance, appellees filed an affidavit of Robert Maclay, a stockholder of Paley Rothman, and an affidavit of Calimafde. Calimafde stated in her affidavit that she is a resident of Maryland and has never been a resident of Texas. She is a stockholder in and practices law at Paley Rothman. Calimafde is licensed to practice law in Maryland and in the District of Columbia. She has never been licensed to practice in Texas, has never practiced in Texas, and has not appeared pro hac vice in any Texas court. Calimafde prepared the defined benefit plans at the request of her and Paley Rothman's client, Actuarial Data. She performed all work in connection with the defined benefit plans in Maryland or Connecticut. All of her communications in furtherance of her work on the benefit plans were conducted from her office in Maryland and did not occur until after the benefit plans and amendments were prepared and

4

adopted. She executed a Form 2848 Power of Attorney and Declaration of Representative Form from her Maryland office for the limited purpose of allowing her to speak to the IRS concerning the benefit plans. Calimafde also sent correspondence from her Maryland office to the IRS office in Covington, Kentucky, in order to secure a favorable determination from the IRS. Paley Rothman received and accepted payment from Abilene Diagnostic, but only sent one invoice in the amount of thirty-five dollars to Abilene Diagnostic directly. All other invoices were sent to Actuarial Data, which in turn sent them to Abilene Diagnostic.

In addition, the affiants stated that Paley Rothman is a law firm established in Maryland with its principal place of business, and only office, located in Maryland. No lawyer associated with Paley Rothman is currently or has in the past ten years been licensed to practice law in Texas, practiced law in Texas, or appeared pro hac vice in any Texas court. Neither Paley Rothman nor Calimafde maintains a registered agent for service of process in Texas. They have never incurred or paid any taxes in Texas. Furthermore, appellees have not engaged in business in Texas, nor have they committed any tort in Texas. Appellees do not have any employees, agents, books, records, telephone listings, or mailing addresses within Texas. They have never sold, consigned, or leased any tangible or intangible property in Texas. Appellees have never advertised for, recruited, or solicited customers, clients, or employees in Texas. And no engagement letter between Paley Rothman and Abilene Diagnostic exists.

Abilene Diagnostic argues that, because appellees specifically created three customized benefit plans for a Texas entity and its Texas employees for implementation in Texas, appellees purposefully availed themselves of the benefits and protections of Texas law. However, appellees contend that this conduct fits squarely within the "direct-a-tort" jurisdictional theory that the Texas Supreme Court rejected in *Michiana*. *See Michiana*, 168 S.W.3d at 788–92. We agree. To determine whether a trial court has specific jurisdiction, the focus is not "on where a defendant directed a tort or where the effects of tortious conduct will be felt," but on whether there is a substantial connection between the defendant's purposeful contacts with the forum state and the operative facts of the litigation. *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Michiana*, 168 S.W.3d at 790–92; *Moki Mac*, 221 S.W.3d at 585).

Abilene Diagnostic directs us to *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009), and *Masada Investment Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985),

in support of its argument that appellees went beyond "directing-a-tort" to Texas when they created the specific benefit plans for use in Texas by a Texas clinic. In *Retamco*, the defendant accepted an assignment of real property interests in Texas. 278 S.W.3d at 336. Although the defendant did not enter Texas in order to purchase the property, the court found that the defendant reached out and created a continuing relationship in Texas by taking assignment of Texas real property and, thus, purposefully availed itself of the benefits and laws of Texas. *Id.* at 339–40. In *Masada*, a Texas attorney prepared a warranty deed for real property in Tennessee and sent the deed to Tennessee to be executed. 697 S.W.2d at 333. The Tennessee Supreme Court held that the nonresident attorney purposefully directed his activities toward the citizens of Tennessee and that his negligent actions resulted in injury there. *Id.* at 335. Thus, because the attorney knew his legal work would control the sale of Tennessee realty and be subject to Tennessee law, he purposefully availed himself of the benefits and laws of Tennessee. *Id.* Both *Retamco* and *Masada* involved real property interests located in the forum state and subject to the law of the forum state. *Retamco*, 278 S.W.3d at 339–40; *Masada*, 697 S.W.2d at 335. The underlying litigation here does not involve real property, and the defined plans are subject to federal ERISA law, not Texas law. *See* 29 U.S.C. § 1144. We find these cases distinguishable from the facts before us; therefore, neither controls our decision here.

Furthermore, Texas courts have held that, where the underlying case involves a legal malpractice action, the focus for personal jurisdiction purposes should be on where the attorneys performed the legal work at issue. *See Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484–85 (Tex. App.—Dallas 2010, pet. denied) (holding trial court did not have specific personal jurisdiction over Washington law firm where the legal work at issue was performed in Washington or Idaho and relevant communications were made from there to Texas); *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (holding trial court did not have specific personal jurisdiction over New York law firm where attorney created opinion letter in New York and sent it to Texas); *Markette*, 240 S.W.3d at 468–69 (holding trial court did not have specific personal jurisdiction over Indiana lawyer where lawyer exercised his legal judgment and formed his legal opinion in Indiana and relevant communications were made from there to Texas).

Here, appellees created the defined benefit plans in Maryland or Connecticut and sent the plans to Texas as requested by their client, Actuarial Data. The plans were not created or sent to

Texas as a result of any contact appellees had with Texas but, instead, were directed to Abilene Diagnostic in Texas at Actuarial Data's request. In addition, the operative facts of the underlying litigation, as to the allegations against appellees, will focus primarily on Calimafde's creation of the defined benefit plans, not the transmission of those plans to Texas. Thus, appellees' alleged liability does not arise out of nor is it related to any activity appellees conducted within Texas. Therefore, appellees did not purposefully avail themselves of the benefits and protections of the law in Texas.

We hold that appellees negated the bases for personal jurisdiction alleged by Abilene Diagnostic. Because we determine that appellees do not have sufficient minimum contacts to establish jurisdiction in Texas, we do not reach whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. We overrule Abilene Diagnostic's sole issue.

The order of the trial court sustaining the special appearance is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


March 22, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

7