ACCEPTED
03-15-00335-CV
6008822
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/9/2015 11:24:41 PM
JEFFREY D. KYLE
CLERK

# NO. 03-15-00335-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

7/9/2015 11:24:41 PM

JEFFREY D. KYLE
Clerk

HERBERT ROLNICK,

*Appellant*

v.

SIGHT'S MY LINE, INC. A FLORIDA CORPORATION; STEWART LANTZ; RIGGS, ALESHIRE & RAY; BLAZIER, CHRISTENSEN, BIGELOW & VIRR; AND ADAMS & GRAHAM,

*Appellees*

Interlocutory Appeal from the 200th Judicial District Court
in Travis County, Texas, The Honorable Tim Sulak, Presiding

# APPELLANT'S BRIEF

RUTH G. MALINAS
Texas Bar No. 08399350
TIM T. GRIESENBECK, JR.
Texas Bar No. 08454450
SCOTT M. NOEL
Texas Bar No. 00797158
PLUNKETT & GRIESENBECK, INC.
Catholic Life Building, Suite 900
1635 N.E. Loop 410
San Antonio, Texas 78209
(210) 734-7092 (telephone)
(210) 734-0379 (facsimile)
rmalinas@pg-law.com

ATTORNEYS FOR APPELLANT
HERBERT ROLNICK

## APPELLANT REQUESTS ORAL ARGUMENT

## IDENTITY OF PARTIES AND COUNSEL

| APPELLANT | APPELLATE AND TRIAL COUNSEL FOR APPELLANT |
|---|---|
| Herbert Rolnick | Ruth G. Malinas (Lead Appellate)<br>Texas Bar No. 08399350<br>Tim T. Griesenbeck, Jr. (Trial)<br>Texas Bar No. 08454450<br>Scott M. Noel (Trial)<br>Texas Bar No. 00797158<br>Plunkett & Griesenbeck, Inc.<br>Catholic Life Building, Suite 900<br>1635 N.E. Loop 410<br>San Antonio, Texas 78209<br>RMalinas@pg-law.com<br>TGriesenbeck@pg-law.com<br>SNoel@pg-law.com |
| APPELLEES/PLAINTIFFS | APPELLATE AND TRIAL COUNSEL FOR APPELLEES/PLAINTIFFS |
| Sight's My Line, Inc., a Florida Corporation<br><br>Stewart Lantz | Brandon Duane Gleason<br>Texas Bar No. 24038679<br>J. Hampton Skelton<br>Texas Bar No. 18457700<br>Skelton & Woody<br>248 Addie Roy Road, Suite B-302<br>Austin, TX  78746<br>hskelton@skeltonwoody.com<br>bgleason@skeltonwoody.com<br><br>Craig S. Hilliard (Pro Hace Vice in Trial Court)<br>Stark & Stark<br>P.O. Box 5315<br>Princeton, NJ  08543-2315<br>chilliard@stark-stark.com |

i

| APPELLEES/DEFENDANTS | APPELLATE AND TRIAL COUNSEL FOR APPELLEES/DEFENDANTS |
|---|---|
| Riggs, Aleshire & Ray | Scott R. Kidd<br>Texas Bar No. 11385500<br>Scott V. Kidd<br>Texas Bar No. 24065556<br>Kidd Law Firm<br>819 W. 11th Street<br>Austin, TX  78701<br>scott@kiddlawaustin.com<br>svk@kiddlawaustin.com |
| Blazier, Christensen, Bigelow & Virr | Michael B. Johnson<br>Texas Bar No. 24029639<br>Salvador Davila<br>Texas Bar No. 24065119<br>Thompson, Coe, Cousins & Irons, LLP<br>701 Brazos, Suite 1500<br>Austin, TX  78701<br>mjohnson@thompsoncoe.com<br>sdavila@thompsoncoe.com |
| Adams & Graham | Robert E. Valdez<br>Texas Bar No. 20428100<br>Jose "JJ" Trevino, Jr.<br>Texas Bar No. 24051446<br>Valdez, Jackson & Trevino, PC<br>1826 North Loop 1604 West, Suite 275<br>San Antonio, TX  78248<br>revaldez@vjtlawfirm.com<br>jtrevino@vjtlawfirm.com |

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL.................................................i

TABLE OF CONTENTS ........................................................ iii

TABLE OF AUTHORITIES.......................................................iv

STATEMENT OF THE CASE ...................................................vi

STATEMENT REGARDING ORAL ARGUMENT ............................vii

ISSUES PRESENTED ...................................................... viii

STATEMENT OF FACTS ........................................................1

I.    UNDERLYING FACTS..................................................1

II.   PROCEDURAL HISTORY..............................................5

SUMMARY OF THE ARGUMENT ...........................................5

ARGUMENT AND AUTHORITIES ...........................................7

I.    Standard of Review ...................................................7

II.   Burdens of Proof........................................................9

III.  The Trial Court Erred In Denying Rolnick's Special
Appearance ..........................................................10

    A.   General Principles Governing Personal
Jurisdiction over a Nonresident ...........................10

    B.   Rolnick Lacks "Minimum Contacts" with Texas...................12

    C.   The Evidence Is Legally Insufficient to Support
Specific Jurisdiction over Rolnick in This Case ...................15

    D.   Even If Rolnick had the Requisite Minimum
Contacts, Exercising Personal Jurisdiction over
Him Would Offend Traditional Notions of Fair
Play and Substantial Justice .............................................26

IV.  Conclusion and Prayer .................................................27

CERTIFICATE OF COMPLIANCE..........................................28

CERTIFICATE OF SERVICE.................................................29

APPENDIX

# TABLE OF AUTHORITIES

Page

## CASES

*Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenburg, Eig & Cooper, Chartered,* 364 S.W.3d 359 (Tex. App.—Eastland 2012 no pet.) ...................................................17

*Ahrens & De Angeli, P.L.C. v. Flinn,* 318 S.W.3d 474 (Tex. App.—Dallas 2010, pet. denied) ........................................................17

*Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801 (Tex. 2002) ......................................................11,12

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987) ...................................................................16

*Bergenholtz v. Cannata,* 200 S.W.3d 287 (Tex.App.—Dallas 2006, no pet.) ...............................24

*BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789 (Tex. 2002) ......................................................7, 8, 12

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ............................................................11, 12

*City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005) ..............................................................8

*Croucher v. Croucher,* 660 S.W.2d 55 (Tex. 1983) ................................................................9

*CSR Ltd.,* 925 S.W.2d 591 (Tex. 1996) ...........................................................105

*Curocom Energy, LLC v. Young-Sub Shim,* 416 S.W.3d 893 (Tex.App.—Houston [1st ........................................................22

*Daimler AG v. Bauman,* ___ U.S. ___, 134 S. Ct. 746 (2014) .....................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* ___ U.S. ___, 131 S. Ct. 2846 (2011) ...................................................15

*Gordon & Doner, P.A. v. Joros,* 287 S.W.3d 325 (Tex.App.—Fort Worth 2009, no pet.) .................23, 25

*Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223 (Tex. 1991) .....................................................12, 13, 16

*Hanson v. Denckla,* 357 U.S. 235 (1958) ...................................................................11

*Horowitz v. Berger,*
377 S.W.3d 115 (Tex.App.—Houston [14th dist.] 2012, no
pet.)................................................................................................22

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984).......................13

*Kelly v. Gen'l Interior Constr., Inc.,*
301 S.W.3d 653 (Tex. 2010) ...........................................................9, 10

*Markette v. X-Ray X-Press Corp.,*
240 S.W.3d 464 (Tex. App.—Houston [14th dist.] 2007, no
pet.)................................................................................................17

*Proskauer Rose, LLP v. Pelican Trading, Inc.,* No. 14-08-00283-
CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th dist.]
Feb. 3, 2009, no pet.) (mem. op.)......................................................17

*Retamco Operating, Inc. v. Republic Drilling Co.,*
278 S.W.3d 333 (Tex. 2009) ...........................................................9, 21

*Scott v. Huey L. Cheramie, Inc.,*
833 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1992, no
writ) ...............................................................................................9

*Siskind v. Villa Found. For Educ., Inc.,*
642 S.W.2d 434 (Tex. 1982) ...........................................................9

*Walden v. Fiore,*
134 S. Ct. 1115 (2014) ........................................................... passim

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ........................................................................12

STATUTES
Tex. Civ. Prac. & Rem. Code § 51.014(7) ..............................................8

RULES
Tex. R. App. P. 28.1(c) .......................................................................8
Tex. R. App. P. 9.4 ............................................................................28

CONSTITUTIONAL PROVISIONS
Tex. Const. art. I, §19.........................................................................11
U.S. Const. amend. XIV, §1..................................................................11

OTHER AUTHORITIES
Robert W. Calvert, *"No Evidence" and "Insufficient Evidence"*
*Points of Error*, 38 Tex. L. Rev. 361, 362-363 (1960).............................8

## STATEMENT OF THE CASE

**Nature of the Case:** This interlocutory appeal arises from legal malpractice claims appellees Sight's My Line, Inc. and Stewart Lantz brought in Texas against three Texas law firms and appellant Herbert Rolnick, a Florida lawyer. Rolnick timely filed a special appearance to challenge the trial court's exercise of personal jurisdiction over him. SML, Lantz and the Texas law-firm defendants opposed Rolnick's special appearance.

**Trial Court:** 200th Judicial District Court, Travis County, Texas, the Honorable Tim Sulak presiding.

**Trial Court Disposition:** The trial court denied appellant Rolnick's special appearance.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would greatly assist the court in this case, because new opinions from the United States Supreme Court have not yet been applied by Texas Courts under facts similar to those present in the instant case. Moreover, oral argument will give the Court the opportunity to question the parties regarding the facts and applicable law. Because personal jurisdiction is a fact-intensive inquiry, appellant respectfully requests oral argument in this case.

# ISSUE PRESENTED

This case presents the following issue and all fairly included subsidiary issues:

> Did the trial court err in denying Rolnick's special appearance?

STATEMENT OF FACTS[1]

## I.    UNDERLYING FACTS

Appellee Stewart Lantz resides in Coral Springs, Florida and is the sole shareholder of appellee Sight's My Line, Inc. ("SML"), a Florida corporation. CR:137. SML owned and operated several retail eyeglass stores in Texas. CR:139. Lantz decided to sell the Texas assets of SML midway through 2012. CR:382. He hired a broker with whom he previously had done business to assist him in selling the business. CR:382-83. The buyer the broker found was American Optical Services, L.L.C. ("AOS"), a Delaware limited liability company having its offices in Nevada. CR:383, 166.

Lantz had an ongoing attorney-client relationship with Florida attorney Herbert Rolnick, who also lives in Coral Springs, Florida. CR:382, 502. Appellant Rolnick graduated from law school in 1980. He was admitted to the Florida Bar in January 1981 and has never been licensed to practice law in any other state. CR:503. Since then, Rolnick's law practice has been located in Broward County, Florida. CR:503. In 1998, Rolnick started representing Lantz individually and entities with which Lantz was associated in various matters. CR:382, 503.

---

[1] The appellate record consists of a clerk's record (cited as "CR:[page #]") and a one-volume reporter's record (cited as "RR:[page#])"

1

Lantz asked Rolnick to represent SML and him with regard to the asset sale to AOS. CR:503. AOS provided the first draft of the asset purchase agreement. CR:387, 504. Rolnick reviewed the AOS draft, discussed it with Lantz, and negotiated terms with AOS. CR:505. When Rolnick communicated with AOS employees, those employees were in Nevada and Rolnick was in Florida. CR:515. AOS and SML ultimately agreed that Nevada law would govern the Asset Purchase Agreement, but Texas law would control the enforceability of the promissory note and security agreement and thus any foreclosure actions. CR:460, 480, 488.

Lantz wanted to be sure that he could foreclose on the Texas assets in the event AOS defaulted on the promissory note. CR:506. Because he was not familiar with Texas law, Rolnick advised Lantz to hire Texas counsel to ensure that the security agreement, promissory note, and a lease complied with Texas law and properly protected SML's and Lantz's interests. CR:506.

Lantz told Rolnick he wanted to use Jason Ray, a Texas attorney with the firm Riggs, Aleshire & Ray ("RAR"). CR:384. Ray, who is board-certified in administrative law, was representing Lantz and SML in a Texas Medicaid investigation and audit. CR:548. Lantz and Rolnick contacted Ray and told him about the transaction between SML and AOS. CR:384. A few days later, Rolnick's legal assistant sent Ray an email confirming that Ray's representation of SML and Lantz would

entail reviewing the promissory note and security agreement, ensuring that the documents complied with Texas law, and making sure Lantz's and SML's rights to the collateral were protected in the event of a default:

> Mr. Rolnick would like you to review the Security Agreement and Promissory Note and confirm that these are acceptable for Texas law, i.e. that they can be recorded and that they would enable us to foreclose in the event of a default.

CR:320. Included with the email were copies of the security agreement, promissory note, and executed asset purchase agreement. CR:476, 333, 444.

Apparently, unbeknownst to the plaintiffs or Rolnick, Ray had no experience in transactions such as the one between SML and AOL. CR:548. Ray sent the documents to Paul Browder, a lawyer with the firm Blazier, Christensen, Bigelow & Virr ("BCBV") and asked him to review them. CR:549-50. Browder sent the documents back to Ray with comments and questions. CR:550. Ray then sent Browder's comments and questions to Rolnick as if they were his own.[2] CR:550, 554.

---

[2] Although Ray claimed he told Lantz and/or Rolnick that his lack of transactional experience would require him to consult with another lawyer, Lantz and Rolnick both testified they did not know about the other lawyer, that it would be Browder, or that Browder had supplied the comments and questions Ray sent as his own. CR:517. Ray sent his bills only to Lantz. CR:551. Browder sent his bills to Ray who then added Browder's work to his own bills. CR:553. Ray did not open a new matter for the work done on the SML-AOS transaction; rather, he placed entries for that work under the same client and matter number used for the Medicaid audit work he had done for SML. CR:556.

The draft documents Rolnick sent to Ray stated the security interests would be perfected by filing a UCC-1 in *Delaware* where AOS was located. CR:333. The comments Ray sent back to Rolnick in Florida, however, included one indicating the UCC-1 instead should be filed in Texas where the assets at issue were located. CR:336. Rolnick accordingly changed the promissory note to state that the UCC-1 would be filed in Texas. CR:516. Rolnick also incorporated into the final documents the other comments/suggested changes on the drafts Ray sent back to him. CR:516. Rolnick sent the original UCC-1 to Ray for filing in Texas. CR:510. No UCC-1 reflecting the security interest in the SML assets was filed in Delaware, the jurisdiction in which AOS was located under the Texas Uniform Commercial Code ("UCC"). CR:383.

AOS defaulted on the promissory note. CR:141. Ray referred Lantz to appellee Adams & Graham to represent Lantz and/or SML in enforcing the security agreement and promissory note. CR:387. AOS ultimately filed a bankruptcy petition in Delaware. CR:141. Lantz learned from SML's bankruptcy lawyer that its security interest had not been perfected, because Texas law actually required that the UCC-1 be filed in the jurisdiction in which the debtor was located, i.e., Delaware, rather than where the assets were located. CR:142. Instead of having a perfected security interest in the assets, SML ended up with an unsecured claim in the AOS bankruptcy. CR:142.

4

## II.    PROCEDURAL HISTORY

SML and Lantz filed suit against RAR, BCBV, and Adams & Graham, the three Texas law firms who had done work in Texas in connection with SML's sale of assets to AOS and attempts to enforce the plaintiffs' security interests against AOS. CR:3. On the same day it answered the suit, RAR filed a third-party petition against Rolnick. CR:17. Rolnick timely filed a special appearance and original answer subject thereto. CR:23, 134. Shortly thereafter, SML and Lantz amended their petition to name Rolnick as a defendant. CR:137. After the parties conducted limited discovery solely on the jurisdictional issue, the trial court held a hearing on the special appearance for which there is a reporter's record filed with this Court. The trial court took the special appearance under advisement and later denied it. CR:697. The order does not specify the basis for the ruling. CR:697. This interlocutory appeal followed. CR:698.

## SUMMARY OF THE ARGUMENT

The United States and Texas Supreme Courts have clearly articulated the Constitutional boundaries of personal jurisdiction in Texas. Plaintiffs and the Texas lawyer defendants have asserted legal malpractice/contribution claims against Rolnick, alleging that his provision of legal services to plaintiffs in Florida caused the harm about which plaintiffs complained. It is undisputed that Rolnick is a Florida

resident whose practice of law is limited to Florida. It is also undisputed that Rolnick and appellee Lantz had an ongoing attorney-client relationship since 1998. The evidence before the trial court and this Court conclusively establishes that all of the legal services Rolnick provided to plaintiffs Lantz and SML (both domiciled in Florida) occurred in Florida.

All of the legal services provided by Rolnick about which plaintiffs complain involve SML's sale of its Texas assets to a Delaware corporation with offices in Nevada. Lantz hired a Texas lawyer with whom he had an on-going relationship to review a promissory note and security agreement to ensure they complied with Texas law, which SML and the buyer had agreed would govern that part of the transaction. Although Rolnick communicated and exchanged drafts with the Texas lawyer, he did so for the benefit of plaintiffs and as part of his representation of them in Florida. It is undisputed that Rolnick never went to Texas and did not perform any of the legal work for plaintiffs in Texas.

Texas cases have held that the personal jurisdiction analysis in legal malpractice cases against nonresident lawyers or law firms must focus on where the legal services were provided. This is so even when the client is a Texas resident and the lawyer has communicated opinions to a Texas client. The court so holding have reasoned that the claims arise, not out of any contacts the nonresident lawyer purposefully directs to Texas, but, rather, from the lawyer's exercise of judgment and provision

of legal services outside Texas. A similar analysis is used when plaintiffs attempt to sue nonresident physicians for medical malpractice that involved treatment provided outside of Texas.

In recent Texas Supreme Court and United States Supreme Court cases, the jurisdictional analysis has been clarified. Both courts have rejected arguments based on conduct characterized as directing a tort to a Texas resident. Moreover, the United State Supreme Court has held that the specific jurisdiction question is not where the plaintiff suffered an injury or effect, but whether the defendant's conduct connects him to the forum State in a relevant and meaningful way. Stated another way, when the plaintiff is the only link between the defendant the forum, a Texas court does not have specific jurisdiction over the nonresident defendant.

Under the analysis used in these cases, the trial court erred in denying Rolnick's special appearance. This Court should reverse the trial court's order and render judgment dismissing the claims against Rolnick.

ARGUMENT AND AUTHORITIES

## I. Standard of Review

"Whether a court has personal jurisdiction over a defendant is a question of law" (*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)) that an appellate court reviews *de novo. See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The

7

resolution of the jurisdictional question, however, may require determinations of fact to which the law is then applied. *See BMC Software,* 835 S.W3d at 794.

If, as here, the trial court does not issue findings of fact and conclusions of law,[3] this Court must assume that the lower court impliedly found all the facts necessary to support the challenged order. *See id* at 795. Because the appellate record in this case includes the reporter's record of the special appearance hearing, the implied findings are not conclusive. *See id.* Rather, the implied findings can be challenged for legal and factual sufficiency. *See id.*

A legal sufficiency complaint must be sustained if:

> the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-363 (1960)). A factual insufficiency challenge must be sustained if a review of the entire record reveals that an implied

---

[3] The trial court need not make findings of fact or conclusions of law with respect to an interlocutory order that can be immediately appealed. Tex. R. App. P. 28.1(c). Denial of a special appearance is such an order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(7).

finding is against the great weight and preponderance of the evidence or is not supported by factually sufficient evidence. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

## II.  Burdens of Proof

Under Texas law, the plaintiff has the initial burden to plead sufficient allegations to confer personal jurisdiction over the out-of-state defendant under the Texas long-arm statute. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). The burden then shifts to the defendant challenging personal jurisdiction to negate factually or legally those bases for personal jurisdiction the plaintiff has alleged.[4] *See Kelly v. Gen'l Interior Constr., Inc.*, 301 S.W.3d 653, 658, 659 (Tex. 2010). If the plaintiff fails to plead that the defendant committed any purposeful acts in Texas, the defendant carries its burden simply by establishing that he is a nonresident. *See Siskind v. Villa Found. For Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982).

The defendant negates jurisdiction factually by producing evidence establishing he "has no contacts with Texas, effectively disproving the plaintiff's allegations." *Kelly*, 301 S.W.3d at 659. The defendant negates jurisdiction legally by showing that: (1) even if the plaintiff's

---

[4] Some cases have stated the defendant's burden is to negate "all bases of personal jurisdiction." *See, e.g.*, This does not mean, however, the nonresident defendant "must negate every possible ground in the universe[;]" rather, the defendant must negate only those bases alleged by the plaintiff to support personal jurisdiction. *See Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 241 (Tex. App.—Houston [14th Dist.] 1992, no writ).

jurisdictional allegations were true, those alleged facts cannot support personal jurisdiction; or (2) the evidence is legally insufficient to establish jurisdiction. *See id.*

## III. The Trial Court Erred In Denying Rolnick's Special Appearance

### A. General Principles Governing Personal Jurisdiction over a Nonresident

The constitutional standards for determining personal jurisdiction are well-settled in Texas. "A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied." *CSR Ltd.,* 925 S.W.2d 591, 594 (Tex. 1996). The Texas Supreme Court has interpreted the Texas long-arm statute "to reach as far as the federal constitutional requirements of due process will allow." *Id.*; *see also Kelly,* 301 S.W.3d at 657; *Moki Mac,* 221 S.W.3d at 575 (citing other cases). As a result, if the exercise of personal jurisdiction comports with due process limits, the requirements of the Texas long-arm statute are likewise satisfied.[5]

The Due Process Clause of the Fourteenth Amendment protects a defendant's liberty interests in not being subject to the binding judgments of a forum with which it has established no meaningful

---

[5] The Texas Supreme Court has cautioned that simply because allegations satisfy the Texas long-arm statute, personal jurisdiction may still be improper over a particular defendant. *See Michiana Easy Livin' Country, Inc., v. Holten,* 168 S.W.3d 777, 784 (Tex. 2005). The court based that analysis on the rule that the long-arm statute can extend no further than the U.S. Constitution allows. *See id.*

contacts, ties, or relations. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-472 (1985); *see also* U.S. Const. amend. XIV, §1; Tex. Const. art. I, §19. In applying that limitation, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King,* 471 U.S. at 474.

Minimum contacts establish personal jurisdiction if a nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Moki Mac,* 221 S.W.3d at 575 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)); *see also Michiana,* 168 S.W.3d at 784. The nonresident defendant's activities "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court," whether those activities occur within or outside Texas. *See Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002).

The "purposeful availment" inquiry has three parts. *See Moki Mac,* 221 S.W.3d at 575. First, only the defendant's contacts with Texas count. *See Michiana,* 168 S.W.3d at 785. The unilateral activities of other parties are irrelevant. *See id.*

Second, the conduct relied upon to establish minimum contacts must be "purposeful," not fortuitous, random, or attenuated. *See id.* When analyzing contacts, courts must focus on the quality and nature of the contacts, rather than the number of contacts or whether the contacts

11

included tortious conduct. *See Am. Type Culture*, 83 S.W.3d at 806.

Finally, the nonresident defendant must have sought some benefit, profit, or other advantage by "availing" himself of Texas. *See Michiana,* 168 S.W.3d at 785*.* This particular aspect of "purposeful availment" is "premised on notions of implied consent[.]" *See id.* In other words, "by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) and *Am. Type Culture*, 83 S.W.3d at 808).

Even if the defendant has purposefully engaged in forum activities, the exercise of jurisdiction still must comport with traditional notions of "fair play and substantial justice." *Burger King,* 471 U.S. at 477-478. This inquiry requires an appellate court to consider several factors, including the burden on the nonresident defendant and the forum state's interests, if any, in resolving the dispute. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228, 231 (Tex. 1991).

## B.     Rolnick Lacks "Minimum Contacts" with Texas

Under modern minimum contacts analysis, a nonresident defendant's conduct is evaluated under two jurisdictional theories: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the nonresident defendant's "alleged liability arises from or is related to an activity conducted within the forum." *BMC Software,* 83 S.W.3d at

796. The minimum contacts analysis for specific jurisdiction focuses "on the relationship among the defendant, the forum and the litigation." *Guardian Royal,* 815 S.W.2d at 228; *see also Moki Mac,* 221 S.W.3d at 575-576 (reaffirming *Guardian Royal* analysis). In order for litigation to arise from or relate to a nonresident defendant's contacts, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac,* 221 S.W.3d at 585.

Barely a year ago, the United States Supreme Court addressed what contacts qualify as "minimum contacts" necessary to create specific jurisdiction. *See Walden v. Fiore,* 134 S. Ct. 1115, 1122 (2014). In its unanimous opinion, the Court explained that the nonresident's "suit related conduct must create a substantial connection with the forum State." *Id.* The Court reaffirmed that the specific-jurisdiction inquiry must focus on "the relationship among the defendant, the forum, in the litigation." *Id.* (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (internal quotations omitted). The Court in *Walden* first held that this relationship has to arise out of contacts the defendant himself created with the forum State. *See id.* at 1122. *Walden* reiterates that contacts between the plaintiff or third parties and the forum State will not satisfy the defendant's focused "minimum contacts" requirement.

13

In *Walden*, the Court further held that the "minimum contacts" analysis must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. In other words, when the plaintiff is the only link between the defendant and the forum, specific jurisdiction is lacking. *See id.* at 1122-1123. The Court emphasized that, although "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties [,]" due process principles require that personal jurisdiction over a defendant be "based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123. Finally, the Court clarified that the same analysis applies when intentional torts are alleged, and more importantly, rejected the argument that a defendant's allegedly tortious conduct that causes the plaintiff to suffer an injury in the forum State is enough. The Court held that the *"proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way."* *Id.* at 1116 (emphasis added). This analysis confirms the analytical framework adopted by the Texas Supreme Court in the *Michiana* and *Moki Mac* cases.

14

General jurisdiction, on the other hand, subjects a nonresident defendant to causes of action that do not arise from or relate to the defendant's purposeful conduct within Texas. As a result, the minimum contacts analysis for general jurisdiction has always been more demanding than for specific jurisdiction. *See CST Ltd.,* 925 S.W.2d at 595. Although Texas cases had previously required only "continuous and systematic contacts" with Texas to support general jurisdiction, two recent United States Supreme Court cases have clarified that general jurisdiction requires even more. *See Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 757 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2853 (2011). "For an individual, however, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.*

It is undisputed that Rolnick's domicile is Florida. It is thus not surprising that appellees asserted only specific, rather than general, jurisdiction. CR:261, 659.

C.   The Evidence Is Legally Insufficient to Support Specific Jurisdiction over Rolnick in This Case

Specific jurisdiction exists when "the defendant's alleged liability arises from or is related to an activity conducted within the forum." *CSR Ltd.*, 925 S.W.2d at 595. Any actions taken outside the forum can constitute minimum contacts only when those actions are "purposefully

15

directed toward the forum state." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987); *see also Guardian Royal*, 815 S.W.2d at 227. The Texas Supreme Court has cautioned, however, that jurisdiction turns on a defendant's contacts, not where the defendant "directed a tort." *Michiana*, 168 S.W.3d at 790.[6]

In *Michiana,* the Texas Supreme Court disapproved those cases holding that "(1) specific jurisdiction is necessarily established by allegations or evidence that a nonresident committed a tort in a telephone call from a Texas number, or that (2) specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves." 168 S.W.3d at 791-792. Moreover, the court thoroughly explained why personal jurisdiction over a nonresident defendant cannot be based on where a tortious injury will be felt by the plaintiff. *See id.* at 788-792. Thus, while allegations that the defendant committed a tort in Texas can satisfy the Texas Long-Arm Statute, such allegations do not necessarily satisfy the U.S. Constitution. *See id.* at 788.

In Texas, the focus of the personal jurisdiction analysis in a legal malpractice suit against a nonresident attorney focuses on where the nonresident attorney performed legal services, which in this case is Florida. *See Abilene Diagnostic Clinic, PLLC v. Paley, Rothman,*

---

[6] As a result, any reliance on cases finding personal jurisdiction over a nonresident defendant because tortious conduct was "directed" to Texas from outside Texas would be misplaced.

*Goldstein, Rosenburg, Eig & Cooper, Chartered,* 364 S.W.3d 359, 365-66 (Tex. App.—Eastland 2012 no pet.); *Ahrens & De Angeli, P.L.C. v. Flinn,* 318 S.W.3d 474, 484-485 (Tex. App.—Dallas 2010, pet. denied); *Proskauer Rose, LLP v. Pelican Trading, Inc.,* No. 14-08-00283-CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.); *Markette v. X-Ray X-Press Corp.,* 240 S.W.3d 464, 468-69 (Tex. App.—Houston [14th dist.] 2007, no pet.). In all of these cases, the appellate courts held there was no specific jurisdiction over nonresident attorneys and law firms where the lawyer exercised his legal judgment, formed his legal opinions, and did the legal work for the client in states other than Texas. The courts so held even when it was undisputed that the work product of the nonresident attorney was sent to Texas or done for a Texas client. *See Abilene Diagnostic,* 364 S.W.3d at 364; *Proskauer,* 2009 WL 24293, at *4; *Markette,* 240 S.W.3d at 468 & n.2.

This same analysis has been used to preclude personal jurisdiction over a nonresident physician in a Texas suit arising from treatment the physician provided in Michigan. *See Brocail v. Anderson,* 132 S.W.3d 552, 563 (Tex.App.—Houston [14th Dist.] 2004, pet. denied). The patient/plaintiff was a former professional baseball player whose initial treatment by the physician in Michigan. *See id.* at 555. After the plaintiff moved to Texas for rehabilitation, the nonresident physician prescribed follow-up treatments to be administered by physicians in Texas. *See id.*

17

at 55-56. Plaintiff sued the physician in Texas, claiming that the doctor's conduct in faxing prescriptions to Texas and communicating with his Texas physicians justified specific jurisdiction. *See id.* at 558. The Texas Supreme Court in *Moki Mac* cited and discussed *Brocail* with approval agreed with the court of appeals' conclusion that the tort about which Brocail complained occurred in the exercise by the physician of his medical judgment in Michigan. *See Moki Mac,* 221 S.W.3d at 588. The analysis in *Brocail* approved and applied by the supreme court applies with equal force to the instant case.

The record before the trial court in the instant case included the entire depositions of Rolnick, Lantz and Ray, affidavits, and documents. The following undisputed evidence establishes that Rolnick lacked minimum contacts with Texas under the analysis used in the above cases:

- Rolnick has been a Florida resident for approximately 35 continuous years (CR:35);

- He has never lived in or even visited Texas (CR:35);

- He is a lawyer licensed to practice in Florida and is a partner in a Florida law firm, the only office of which is in Florida (CR:35);

- He has never been licensed to practice law in Texas and has never appeared *pro hac vice* in a Texas court (CR:35);

- No lawyer associated with Rolnick's law firm has been licensed to practice law in Texas, has practiced law in Texas, or has appeared *pro hac vice* in a Texas court (CR:35);

18

- Rolnick does not have a registered agent for service of process in Texas (CR:35);

- He has never had any bank accounts in Texas (CR:35);

- Rolnick has never owned or leased any real property in Texas, does not conduct business in Texas, and has never paid or been required to pay taxes in or to Texas (CR:35);

- He does not have any employees, agents, books, records, mailing addresses, or telephone listings in Texas (CR:36);

- Rolnick has never sold, consigned, or leased any tangible or intangible property in Texas (CR:36);

- He has never advertised for, recruited, or solicited clients, employees, or customers in Texas (CR:36);

- Rolnick had represented Lantz since 1998 in individual matters and matters involving Florida-based companies Lantz has owned (CR:382, 503);

- Lantz, who resides in Florida, asked Rolnick to represent him in the sale of SML's assets in Texas to AOS (CR:503);

- SML is a Florida corporation that owned and operated retail eyeglass businesses in Texas (CR:139);

- AOS is a Delaware limited liability company with its offices in Nevada (CR:166);

- When SML and AOS agreed that Texas law would govern the enforceability of the promissory note and security agreement in favor of SML, Rolnick advised Lantz to obtain Texas counsel to advise Lantz on how to protect his interests under Texas law. Rolnick did so because he was not familiar with Texas law (CR:39);

- Lantz chose Ray as his Texas counsel, because Ray had been representing him and/or SML in a Texas Medicaid audit. Rolnick did not solicit or hire Ray or his firm (CR:384, 389, 386-87);

19

- According to Ray, Lantz insisted on hiring Ray, even though Ray's expertise was in administrative law rather than transactional law (CR:549);

- Lantz admitted that Rolnick did not identify or solicit Ray as Texas counsel for the transaction (CR:386-87);

- In the past, when legal issues had arisen regarding SML's Texas operations, Lantz had hired a Texas lawyer to resolve them (CR:390);

- All of the legal work Rolnick did in connection with the SML-AOS transaction took place in Florida in the course of his representation of SML and/or Lantz (CR:37);

- Rolnick communicated from Florida with the AOS representatives, who were in Nevada (CR:37,505);

- Rolnick never spoke with, met with, or sought legal services from appellees BCBV and Adams & Graham, either for himself or any of his clients, including Lantz or SML (CR:515, 517);

- Ray admitted that: (1) Lantz was his client (CR:550); (2) he asked a BCBV lawyer to review the documents (CR:553); (3) he passed off as his own the BCBV lawyer's comments and questions regarding the documents (CR:550, 554); and (4) he sent his bills to Lantz (CR:551);

- Ray admitted that he did not have an attorney-client relationship with Rolnick (CR:551-52);

- Rolnick confirmed in writing that Ray's work for Lantz and SML was to "to review the Security Agreement and Promissory Note and confirm that these are acceptable for Texas law, i.e. that they can be recorded and that they would enable us to foreclose in the event of a default" (CR:320);

- The draft promissory note Rolnick sent to Ray for review stated that the UCC-1 would be filed in Delaware (CR:333);

- Rolnick interpreted the comments Ray emailed back to Rolnick as indicating the UCC-l should instead be filed

in Texas, so Rolnick revised the promissory note to reflect perfection of the security interest by filing the UCC-1 in Texas rather than in Delaware (CR:336, 516);

- The work that Ray and the other Texas lawyers did in connection with the SML-AOS transaction was for the benefit of Lantz and SML (CR:556);

- Rolnick's "contacts" with Texas with regard to the SML-AOS transaction were limited to emailing the transactional documents to Ray, having a few telephone conferences with Ray to discuss the comments Ray sent back to Rolnick, and mailing the original closing documents to Ray to record (CR:160);

- Ray introduced plaintiffs to Adams & Graham (CR:387); and

- Rolnick did not benefit or gain any advantage from his incidental contacts with plaintiffs' lawyers in Texas (CR:386).

Plaintiffs and defendant Adams & Graham filed responses to Rolnick's special appearance.[7] None of the arguments made in the responses takes the instant case out of the general rule that a Texas court does not have personal jurisdiction over a nonresident lawyer sued for malpractice, when all of the legal work done for the client takes place outside of Texas.

For example, plaintiffs place much emphasis on the fact that the SML-AOS transaction involved the sale of businesses and leases located in Texas. Although a defendant's purchase or sale of real property located in Texas can constitute purposeful availment (*see Retamco,* 278 S.W.3d

---

[7] Defendants RAR and BCBV did not file responses.

at 340), a nonresident defendant's communications about or involvement in a transaction involving Texas real property does not constitute purposeful availment when the defendant does not have an interest in the property. *See Curocom Energy, LLC v. Young-Sub Shim,* 416 S.W.3d 893, 897-898 (Tex.App.—Houston [1st Dist.] 2013, no pet.) (holding that Texas court lacked jurisdiction over nonresident defendant in suit alleging fraud in connection with sale to plaintiff of oil and gas interests in Texas, where fraudulent conduct took place in Korea and defendant had no ownership interest in the land at issue); *Horowitz v. Berger,* 377 S.W.3d 115, 125 (Tex.App.—Houston [14th dist.] 2012, no pet.) (holding there was no personal jurisdiction over Israeli promoter of Texas real property because alleged fraud occurred exclusively in Israel and emphasizing that promoter never owned an interest in the property). That is the case here. All of Rolnick's legal work involving the sale of SML's assets took place in Florida, and there is no evidence that Rolnick owned any interest in SML or any of the Texas assets.

Plaintiffs also argued that Rolnick "quarter-backed" the transaction and thus his actions were directed towards Texas. This argument too is defeated by the analysis adopted in 2007 by the Texas Supreme Court in *Michiana* and *Moki Mac,* as well as the analytical frame work required by the recent United States Supreme Court decision in *Walden*. It is undisputed that all of the work Rolnick did with respect

22

to the transaction was done for the benefit of Lantz and/or SML, his Florida clients. All of that work was done in Florida, and involved no travel to Texas. As the Court explained in *Walden,* it is the defendant's contacts with the forum, not with a person living there that are jurisdictionally relevant. Simply put, appellees' reliance on the activities of the Texas lawyers are not relevant to the minimum contacts analysis.

*Gordon & Doner, P.A. v. Joros,* 287 S.W.3d 325 (Tex.App.—Fort Worth 2009, no pet.) illustrates the point. In *Gordon,* a Florida resident sued a Florida law firm and a Texas law firm alleging legal malpractice in connection with the plaintiff's claim for injuries allegedly caused by a prescription drug. *See id.* at 328. The plaintiff hired the Florida lawyer to file suit on his behalf in multi-district litigation pending in a New York federal district court. *See id.* The Florida lawyer referred the case to the Texas lawyer. *See id.* The Florida and Texas lawyers allegedly entered into a written agreement to jointly represent the Florida client. *See id.* According to the Florida client, the Texas lawyer would be lead counsel, with a substantial portion of the legal services to be done by the Texas lawyer in Texas. *See id.* According to the alleged agreement, however, the Florida and Texas lawyers "would remain jointly responsible for [the plaintiff's] case." *Id.*

Although both lawyers allegedly told their Florida client his case would be filed "soon," the claim was never filed. *See id.* at 328-29. The

23

client filed the legal malpractice suit in Texas state district court. The Florida lawyer filed a special appearance, which the trial court denied. *See id.* at 330.

The Fort Worth Court of Appeals reversed and rendered a judgment dismissing the Florida client's claims against the Florida lawyer for want of jurisdiction. *See id.* at 336. Although the court held that the contract between the Florida and Texas lawyers satisfied the "doing business" requirement of the Texas long-arm statute, the court relied on *Moki Mac* in holding that satisfying the Texas Long-Arm statute is not sufficient. *See id.* at 332. The court then conducted the minimum contacts analysis required by federal due process principles. Relying on cases holding that merely contracting with a Texas resident was insufficient, the court rejected the argument that the contract between the Florida and Texas lawyer supported the exercise of specific jurisdiction. *See id.* at 332. The court also rejected the Florida client's argument based on the fact that the parties intended most of the legal services on the case to occur in Texas. The court held that those services, which were to be performed by the Texas lawyer, were not relevant to the minimum contacts analysis. *See id.* at 333.[8]

---

[8] *See also Bergenholtz v. Cannata,* 200 S.W.3d 287, 292 (Tex.App.—Dallas 2006, no pet.) (plaintiff's receipt of legal advice, billings, and correspondence in Texas from nonresident lawyer not relevant to jurisdiction).

Moreover, the *Gordon* analysis and holding conclusively rebuts appellees' argument in their response that collaboration between a Florida lawyer and a Texas lawyer can confer personal jurisdiction on the Florida lawyer, particularly when the two lawyers represent the same Florida client. *Gordon's* holding that there was no jurisdiction over the Florida lawyer, despite the fact that most of the legal work for the client's litigation would be done in Texas (albeit by the Texas lawyer) applies with particular force here, since the legal work done by the Texas lawyer in the instant case was far less.

Furthermore, it is undisputed that any phone calls between Rolnick and Ray, emails between them transmitting documents, and Rolnick's participation in negotiations with AOS are not minimum contacts by Rolnick with Texas. This is particularly true, since the phone calls and work done in Texas by Ray and the other Texas lawyers and by Rolnick in Florida was for their Florida client's benefit.

Finally, the record in this case conclusively establishes that, from Rolnick's perspective, his contacts with the Ray were the sort of fortuitous, random, or attenuated contacts that *Walden* teaches cannot support personal jurisdiction over a nonresident defendant, such as Rolnick. Rolnick's contacts with Ray were fortuitous, because they resulted from the fact that the SML assets being sold were in Texas. There is no evidence that Rolnick had any interest in those assets or any

25

part in the decision to sell them. The choice of Texas law was also fortuitous from Rolnick's perspective, because that choice was made because plaintiffs wanted to be able to foreclose on those assets, which were to be located in Texas after the sale.[9]

D.    Even If Rolnick had the Requisite Minimum Contacts, Exercising Personal Jurisdiction over Him Would Offend Traditional Notions of Fair Play and Substantial Justice

Even when a defendant has minimum purposeful contacts with a state, the state court cannot exercise personal jurisdiction over the defendant if doing so would offend traditional notions of fairness. *See Burger King*, 471 U.S. at 477-478. Texas courts evaluate several factors in determining whether asserting jurisdiction over a nonresident defendant would be fair and just, including: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Guardian Royal*, 815 S.W.2d at 228, 232. In this case, the relevant factors show

---

[9] Plaintiffs also made a strange argument that personal jurisdiction over Rolnick could be established by agency principles. CR:281-282. He further admitted that he became involved in the sale of SML's assets through a phone call he received from Lantz, who asked him to look at the sale documents and work with Rolnick. CR:549.

that asserting jurisdiction over Rolnick would indeed violate traditional notions of fair play and substantial justice.

The burden on Rolnick to litigate in Texas would be significant. His law practice is located in Florida, the only place in which he is licensed to practice law. As explained previously, Rolnick has no property, employees, or assets in Texas.

Texas has no interest in adjudicating any dispute between Rolnick and plaintiffs, both of whom are domiciled in Florida. This is especially true, because it is undisputed that all of Rolnick's legal work for plaintiffs took place outside of Texas in Florida. Since Rolnick and plaintiffs are residents of Florida, that state would be a much more convenient forum for all of them.

## IV.    Conclusion and Prayer

For all of the reasons given above, the trial court erred in denying Rolnick's special appearance. Appellant Herbert Rolnick respectfully prays for the Court to reverse the trial court's order, render judgment dismissing the claims against him for lack of personal jurisdiction and for such other relief to which he may be entitled.

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, the undersigned certifies this Appellant's Brief complies with the type-volume limitations of that rule. The undersigned prepared the Appellant's Brief using Microsoft Word 2013 and is relying on that software's word-count function.

Exclusive of the exempted portions listed in Texas Rule of Appellate Procedure 9.4, the brief contains 6,439 words.

/s/ Ruth G. Malinas
RUTH G. MALINAS

Respectfully submitted,

**RUTH G. MALINAS**
Texas Bar No. 08399350
**Plunkett & Griesenbeck, Inc.**
Catholic Life Building, Suite 900
1635 N.E. Loop 410
San Antonio, Texas 78209
(210) 734-7092 (telephone)
(210) 734-0379 (facsimile)
rmalinas@pg-law.com


    /s/ *Ruth G. Malinas*
RUTH G. MALINAS

**COUNSEL FOR APPELLANT**
**HERBERT ROLNICK**


## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing Appellant's Brief has been forwarded this 9th day of July, 2015, to the following attorneys of record via the method stated:

J. Hampton Skelton
Brandon Duane Gleason
Skelton & Woody
248 Addie Roy Road, Suite B-302
Austin, TX  78746
hskelton@skeltonwoody.com
bgleason@skeltonwoody.com
Attorneys for Sight's My Line, Inc.,
a Florida Corporation and
Stewart Lantz

Scott R. Kidd
Scott V. Kidd
Kidd Law Firm
819 W. 11th Street
Austin, TX  78701
scott@kiddlawaustin.com
svk@kiddlawaustin.com
Attorneys for Riggs, Aleshire & Ray

Michael B. Johnson
Salvador Davila
Thompson, Coe, Cousins & Irons, LLP
701 Brazos, Suite 1500
Austin, TX  78701
mjohnson@thompsoncoe.com
sdavila@thompsoncoe.com
Attorneys for Blazier, Christensen,
Bigelow & Virr

Robert E. Valdez
Jose "JJ" Trevino, Jr.
Valdez, Jackson & Trevino, PC
1826 North Loop 1604 West, Suite 275
San Antonio, TX  78248
revaldez@vjtlawfirm.com
jtrevino@vjtlawfirm.com
Attorneys for Adams & Graham

/s/ Ruth G. Malinas
RUTH G. MALINAS

30

# Appendix

Filed in The District Court
of Travis County, Texas

MAY 1 4 2015

At_____4:28 p M.

Velva L. Price, District Clerk

No. D-1-GN-14-004583

| | | |
|---|---|---|
| SIGHT'S MY LINE, INC., et al | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| RIGGS, ALESHIRE & RAY, et al | § | 200th JUDICIAL DISTRICT |

## ORDER OVERRULING SPECIAL APPEARANCE

On the 14th day of May, 2015, came on for hearing the special appearance filed by Herbert Rolnick. Having considered the pleadings, special appearance, evidence, and argument of counsel, the court concludes that the special appearance should be overruled.

IT IS THEREFORE ORDERED that Herbert Rolnick's special appearance be, and the same is hereby, overruled.

Signed this 14TH day of May, 2015

_____
Judge Presiding
TIM SULAK

004028458

697