**Robert P. MARKETTE, Jr. and Gilliland & Caudill, L.L.P., Appellants**

v.

**X–RAY X–PRESS CORPORATION, Appellee.**

No. 14–07–00146–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 18, 2007.

John D. Gilpin and Zandra Elayne Foley, Houston, TX, for appellants.

George Frederick May, Jeffery B. Kaiser, Houston, TX, for appellees.

Panel consists of Justices YATES, SEYMORE, and EDELMAN.*

## SUBSTITUTE OPINION
## ON REHEARING

LESLIE B. YATES, Justice.

We withdraw our opinion issued August 30, 2007, and substitute the following opinion.

Appellants appeal the trial court's order denying their special appearance. Because we determine that appellee has not met its burden of alleging facts showing that appellants' contacts with Texas are substantially connected to the operative facts of the underlying litigation, we reverse and render judgment dismissing this case for lack of personal jurisdiction.

## I. BACKGROUND

After appellee X–Ray X–Press Corporation ("X–Ray"), a Texas corporation, was sued in Indiana by C & G Technologies, Inc. ("C & G"), it hired appellant Gilliland & Caudill, L.L.P. ("Gilliland"), an Indiana law firm, to defend its interests. Appellant Robert P. Markette, Jr., an attorney with Gilliland who is licensed to practice law in Indiana, sent X–Ray a letter in Texas via facsimile stating that he "will be handling the litigation currently pending in Washington County, Indiana." Markette

* Senior Justice Richard H. Edelman sitting by assignment.

also enclosed a copy of Gilliland's standard legal services contract, which X–Ray signed in Texas and returned to Markette. Immediately before the line for X–Ray's signature, the contract states: "I have read and understand the foregoing and wish to retain [Gilliland] to represent [X–Ray] in litigation currently pending in Washington County[,] Indiana."

Markette filed a motion to dismiss the Indiana suit for lack of personal jurisdiction, which the Indiana court denied. Markette then wrote X–Ray a letter, which he emailed to X–Ray in Texas, providing legal advice as to three options for proceeding. This case centers around the first option:

> The first option is to take no further action. If [X–Ray] does not file an answer in this matter, [C & G] will move for default judgment. Assuming [X–Ray] ignores the motion, the Court will grant judgment in favor of [C & G] for the amount it demanded in its complaint. At that time, [C & G] will institute enforcement proceedings in order to collect the judgment. *[X–Ray] could, at that time, relitigate the issue of jurisdiction.* Because [C & G] would likely need to use the Texas court system to enforce the judgment, *[X–Ray] could attack the jurisdiction in a Texas court, which would be more likely to agree that Indiana did not have jurisdiction over a Texas company.* However, if the Texas court's [sic] agreed with the Indiana court, [X–Ray] would be saddled with a default judgment that it would have to satisfy.

(emphasis added). X–Ray followed this first option and allowed C & G to obtain a default judgment against it in the Indiana suit. Thereafter, C & G filed a suit in Texas to enforce the judgment, and X–Ray was ultimately required to satisfy that judgment.

X–Ray sued Markette and Gilliland for legal malpractice and many related claims, including fraud, negligent misrepresentation, breach of fiduciary duty, and breach of contract. Markette and Gilliland filed special appearances. The trial court initially granted their special appearances, but thereafter, the court granted X–Ray's motion for new trial and reversed its ruling. Markette and Gilliland then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp.2006) (allowing interlocutory appeal from denial of special appearance).

## II. ANALYSIS

Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002); *Schott Glas v. Adame,* 178 S.W.3d 307, 312 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). When, as here, the facts underlying the jurisdictional issue are undisputed, we review the trial court's determination de novo. *Schott Glas,* 178 S.W.3d at 312; *see American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). The plaintiff bears the initial burden of pleading facts sufficient to establish personal jurisdiction. *Marchand,* 83 S.W.3d at 793; *Schott Glas,* 178 S.W.3d at 313. The burden then shifts to the defendant challenging personal jurisdiction to negate all bases of jurisdiction alleged by the plaintiff.[1] *Marchand,* 83

---

1. X–Ray makes several arguments as to how appellants have not met their burden of negating all bases of jurisdiction. We need not consider these arguments because we conclude that the basic jurisdictional facts alleged by X–Ray, which are not disputed, do not establish jurisdiction, and thus X–Ray has not met its initial burden.

S.W.3d at 793; *Schott Glas,* 178 S.W.3d at 313.

The Texas long-arm statute governs Texas courts' exercise of personal jurisdiction over a nonresident defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp.2006); *Schott Glas,* 178 S.W.3d at 312. The long-arm statute reaches as far as federal constitutional due process will allow, and thus the long-arm statute is satisfied if an assertion of personal jurisdiction comports with due process. *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex., 2007); *Schott Glas,* 178 S.W.3d at 312. Personal jurisdiction is proper when the nonresident defendant has established "minimum contacts" with the forum and the exercise of jurisdiction comports with " 'traditional notions of fair play and substantial justice.' " *Moki Mac,* 221 S.W.3d at 574 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The touchstone of the minimum contacts analysis is purposeful availment—the defendant's contacts must show that it purposefully availed itself of the privileges and protections of the forum's law to subject itself to jurisdiction there. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784–85 (Tex.2005).

A defendant's contacts can give rise to either general or specific jurisdiction. General jurisdiction is based on continuous and systematic contacts with the forum. *Moki Mac,* 221 S.W.3d at 575. Specific jurisdiction is based on purposeful contacts that give rise or relate to the litigation. *Id.* In this case, X–Ray alleges only specific jurisdiction. Thus, for the trial court to have properly exercised specific jurisdiction in this case, (1) Markette and Gilliland must have made minimum contacts with Texas by purposefully availing themselves of the privilege of conducting activities here and (2) their liability must have arisen from or relate to those contacts. *See id.*

In *Moki Mac,* the supreme court analyzed the relatedness requirement of specific jurisdiction. The court noted that neither it nor the United States Supreme Court had given much guidance as to how closely related a cause of action must be to the defendant's forum activities to support personal jurisdiction. *See id.* at 579, 584. After discussing and rejecting three other approaches, the court determined that "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *See id.* at 579–584. Thus, the court held in *Moki Mac* that the Texas contacts of a Utah-based expedition company were not sufficiently related to the cause of action because the operative facts of the litigation principally concerned the negligence of guides in Arizona, even though the plaintiff parents may have relied on the company's safety representations made in the promotional materials it sent to Texas in deciding to send their son on a fatal rafting trip in Arizona. *See id.* at 572, 584–585.

The *Moki Mac* court analogized the facts of its case to our previous decision in *Brocail v. Anderson,* 132 S.W.3d 552 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). *See Moki Mac,* 221 S.W.3d at 587. *Brocail* involved an injured former Detroit Tigers pitcher who underwent treatment by a team doctor in Michigan. *Brocail,* 132 S.W.3d at 555. When the pitcher decided to return to his home in Texas, the doctor prescribed follow-up physical therapy treatments that were administered in Texas. *Id.* The doctor faxed treatment prescriptions to Texas and communicated with the physical therapists in Texas. *Id.* The pitcher sued the Michigan doctor in

Texas, asserting specific jurisdiction based on the doctor's contacts with Texas regarding his physical therapy and the doctor's alleged misrepresentation in Texas by failing to fully disclose the true extent of his injuries to the physical therapists. *Id.* at 558. We rejected this argument, stating that the pitcher "is complaining about a physical injury based on a course of treatment. Any tort occurred in the exercise of medical judgment in prescribing a course of physical therapy from Michigan, not from the communication of that prescription to [Texas]." *Id.* at 563. The court in *Moki Mac* applied this analysis to its case, noting that the injuries for which the parent plaintiffs sought recovery were based on their son's death in Arizona and that the relationship between the operative facts of the litigation and the company's Texas promotional activities were too attenuated to satisfy due process. *See Moki Mac*, 221 S.W.3d at 587.

 We find *Moki Mac* and *Brocail* controlling in this case. X–Ray's primary jurisdictional allegation is that Mark-

ette provided incorrect legal advice about Texas law upon which it relied to its detriment.[2] Markette exercised his legal judgment and formed his legal opinions in Indiana, which he then communicated to X–Ray in Texas. The operative facts of the underlying litigation will focus primarily on Markette's legal advice, not the communication of that advice to Texas, and thus specific jurisdiction does not arise in this case. *See Moki Mac*, 221 S.W.3d at 587; *Brocail*, 132 S.W.3d at 563.

X–Ray argues that Markette's act of giving legal advice on Texas law directed to a Texas client is sufficient to establish personal jurisdiction.[3] Despite appellants' assertion that it did not provide legal advice on Texas law because it cited no cases or statutes and was merely discussing possibilities, we conclude that advising X–Ray that it *"could* attack the jurisdiction in a Texas court, which would be *more likely to agree* that Indiana did not have jurisdiction over a Texas company" constituted legal advice about Texas law. (emphasis added). However, that is still insufficient

2. X–Ray also points to additional contacts showing that (a) it entered an attorney/client relationship with Markette by signing a contract that he sent to Texas, (b) Markette communicated with X–Ray about this representation and his advice to X–Ray via telephone, facsimile, and mail, and (c) it charged fees to X–Ray for these services. However, neither the mere existence of an attorney/client relationship between a resident client and an out of state attorney nor the routine correspondence and interactions attendant to that relationship are sufficient to confer personal jurisdiction. *See Geo–Chevron Ortiz Ranch v. Woodworth*, No. 04–06–00412–CV, 2007 WL 671340, at *3, 5 (Tex.App.-San Antonio Mar. 7, 2007, pet. denied) (mem.op.) (finding no personal jurisdiction, despite out of state attorney's representation of Texas client, related trip to Texas, attending telephone deposition in Texas, and communications with client); *Klenk v. Bustamante*, 993 S.W.2d 677, 682–83 (Tex.App.-San Antonio 1998, no pet.) (finding no personal jurisdiction over out of state lawyer, stating that an attorney/client relation-

ship and accompanying telephone calls and correspondence to Texas client were insufficient); *Myers v. Emery*, 697 S.W.2d 26, 31–32 (Tex.App.-Dallas 1985, no pet.) (finding that attorney/client relationship with Texas client, attendant communication, and receipt of funds from Texas client did not establish personal jurisdiction over out of state attorney).

3. X–Ray also asserts that the exercise of specific jurisdiction is proper because Markette's act of giving legal advice on Texas law to Texas residents without local counsel constitutes the unauthorized practice of law. *See* TEX. GOV'T CODE ANN. § 81.101(a) (Vernon 2005) (defining the practice of law as including "the giving of advice"). However, X–Ray cites no authority providing that an out of state attorney giving legal advice to a resident client about the forum's law constitutes the practice of law in that forum or that such activity is sufficient to confer specific jurisdiction. In the absence of such authority, we decline to so hold.

to establish personal jurisdiction. Markette's legal judgment, which will be the focus of the underlying litigation, was exercised in Indiana, just as the doctor in *Brocail* exercised his medical judgment in Michigan. Moreover, the supreme court has rejected the notion of focusing on where a defendant directed a tort or where the effects of tortious conduct will be felt in determining specific jurisdiction.[4] *See Michiana,* 168 S.W.3d at 790–92. Rather, we analyze the degree of connectedness between the forum contacts and the litigation to determine whether the operative facts of the litigation focus on those contacts. *See Moki Mac,* 221 S.W.3d at 584–585.

Because we conclude that X–Ray has not met its burden of pleading facts sufficient to give rise to specific jurisdiction because Markette's and Gilliland's Texas conduct is not substantially connected to the operative facts of the litigation, we need not reach Markette's and Gilliland's second issue, in which they argue that exercise of personal jurisdiction does not comport with traditional notions of fair play and substantial justice. We reverse the trial court's judgment and render judgment dismissing this case for lack of personal jurisdiction.

---

4. The *Michiana* court specifically disapproved of this court's opinion in *Memorial Hospital System v. Fisher Insurance Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ), in which we had held that "if the tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum, it must reasonably anticipate being haled into court there to answer for its actions." *See Michiana,* 168 S.W.3d at 792 n. 81. We note that two of X–Ray's primary authorities supporting jurisdiction against appellants rely on *Memorial Hospital. See Tempest Broadcasting Corp. v. Imlay,* 150 S.W.3d 861, 874 (Tex. App.-Houston [14th Dist.] 2004, no pet.); *Cartlidge v. Hernandez,* 9 S.W.3d 341, 347–49 (Tex.App.-Houston [14th Dist.] 1999, no pet.). X–Ray's other primary authority, though not relying on *Memorial Hospital,* is distinguishable on its facts because the nonresident lawyer specifically promised to protect the forum client's subrogation interest in Texas whereas here, Markette never promised to represent X–Ray in Texas. *See Rowland & Rowland, P.C. v. Tex. Employers Indem. Co.,* 973 S.W.2d 432, 435–36 (Tex.App.-Austin 1998, no pet.).