# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00335-CV

**Herbert Rolnick, Appellant**

**v.**

**Sight's My Line, Inc., a Florida Corporation; Stewart Lantz; Riggs, Aleshire & Ray; Blazier, Christensen, Bigelow & Vir, P.C.; and Adams & Graham, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-14-004583, HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal of the denial of a special appearance filed by appellant Herbert Rolnick. *See* Tex. Civ. Prac. & Rem. Code § 51.014(7). Appellees Sight's My Line, Inc., a Florida Corporation, and Stewart Lantz (collectively, Plaintiffs) filed the underlying legal malpractice lawsuit against appellee Texas law firms Riggs, Aleshire & Ray; Blazier, Christensen, Bigelow & Vir, P.C.; and Adams & Graham, alleging that the firms failed to properly perfect Plaintiffs' security interest in connection with a secured promissory note, causing them damages. One of the firms filed a third-party petition against Florida resident and attorney Rolnick alleging that, to the extent the firm was liable, Rolnick was also liable because he had "retained" the firms to perform certain actions in Texas. Plaintiffs later amended their pleadings to name Rolnick as a defendant. Rolnick appeals the trial court's denial of his special appearance. We will reverse the trial court's order and render judgment dismissing the claims against Rolnick for lack of jurisdiction.

## BACKGROUND

This dispute arose out of a transaction in which Florida resident Lantz employed various legal counsel to assist in the sale of assets (comprising a chain of optometry establishments located in Texas) belonging to his solely owned corporation Sight's My Line. The buyer was a Delaware corporation, which agreed to pay part of the purchase price over a five-year term in accordance with the terms of a secured promissory note, which provided Plaintiffs with a security interest in certain collateral. When the buyer defaulted, Lantz hired appellee Adams & Graham to represent him and Sight's My Line in enforcing the security agreement and promissory note that the other appellee attorneys had prepared and/or reviewed in the course of their representation. The buyer subsequently filed a bankruptcy petition in Delaware. The bankruptcy court issued an order avoiding Plaintiffs' security interest because it had not been perfected by filing a UCC-1 in Delaware, where the debtor was located. *See* 11 U.S.C. § 544(b)(1) (outlining circumstances under which bankruptcy trustee may avoid creditor's unsecured claim). Plaintiffs then sued all the attorneys representing them in connection with the transaction, alleging that the attorneys committed legal malpractice because they "failed to properly perfect their security interest" in the collateral "by failing to file a UCC-1 in the State of Delaware," causing them damages.

The legal representation for this transaction began with Rolnick in Florida, who had been a longtime attorney for Lantz in other matters, including the formation of Sight's My Line years before the events giving rise to this lawsuit. In the course of negotiating the transaction, Rolnick recommended that Lantz obtain Texas counsel to ensure that it complied with Texas law, specifically to ensure that Lantz's assets would be protected in the event of the buyer's default and subsequent

2

foreclosure on the promissory note.[1]  Because Lantz already had an established relationship with a Texas attorney (Jason Ray, with appellee law firm Riggs, Aleshire & Ray), Lantz suggested that they contact Ray to assist with the Texas aspects of the transaction.[2]

While there is some dispute in the record as to whether he informed Rolnick and Lantz prior to the fact, Ray sought the counsel of attorney Paul Browder with another Texas law firm, appellee Blazier, Christensen, Bigelow & Vir, to assist him in his representation of Lantz in this transaction.[3]  Rolnick's only contacts with the Texas attorneys were a few phone calls and e-mail exchanges with Ray.  Appellees claim that the following communications support Texas's jurisdiction over Rolnick:  (1) an e-mail from Ray to Rolnick in which Ray incorporated Browder's "questions and comments" in response to a draft promissory note and security agreement, in which Ray/Browder wrote, "Where will the assets be held?  Texas right?  Shouldn't the UCC-1 be filed where the assets are located?"[4] and (2) a phone call and subsequent e-mail in which Rolnick

---

[1]  The transaction had been negotiated such that Nevada law would govern the terms of the asset purchase agreement, while Texas law would govern enforceability of the promissory note and security agreement.

[2]  Ray, an attorney board-certified in administrative law, had previously represented Lantz and Sight's My Line in a Texas Medicaid investigation and audit.

[3]  In his deposition, Ray testified that he told Lantz and/or Rolnick over the phone that his lack of transactional experience would require him to consult with another lawyer.  Lantz and Rolnick each testified that they did not know about the other lawyer, that it would be Browder, that Browder had supplied comments and questions on the documents Ray sent over for his review, or that Ray had forwarded Browder's comments and questions to Rolnick as if they were his own.  Browder did not send any bills for his representation to Lantz or otherwise communicate with Lantz or Rolnick.  Rather, Ray added Browder's work to his own bills, which he sent directly (and only) to Lantz.

[4]  Appellee law firms contend that from these *questions* raised by Ray/Browder, Rolnick made the unilateral and final decision about where to file the UCC-1 and did not further consult the Texas attorneys or respond to their comments and questions.

"prevailed upon" and "directed" Ray to file a UCC-1 (which Rolnick prepared) in Texas, two months after the transaction had closed. Browder, allegedly at Ray's request, did, in fact, file a UCC-1 in Texas. No UCC-1 was filed in Delaware.

It is undisputed that Rolnick exercised his legal judgment in Florida, where he resides, and that he has never visited Texas, is not licensed here, and has no regular and systematic connections to Texas that would bring him under this state's general jurisdiction. However, it is also undisputed that he communicated with Ray (by phone and e-mail) several times during the course of his representation of Lantz in connection with this transaction. We now consider whether his Texas contacts were sufficient to authorize a Texas court to exercise personal jurisdiction over him.

## DISCUSSION

Texas courts may exercise jurisdiction over a nonresident if two conditions are satisfied: (1) the Texas long-arm statute authorizes the exercise of personal jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state, including by the commission of a tort, in whole or in part. Tex. Civ. Prac. & Rem. Code § 17.042. The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise

4

of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* Under the minimum-contacts analysis, we must determine whether the nonresident defendant has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). The "fair play and substantial justice" consideration takes into account several factors. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (listing factors, including burden on defendant and interests of forum state in adjudicating dispute).

Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Marchand*, 83 S.W.3d at 796. The defendant's activities must have been purposefully directed toward the forum state. *See Guardian Royal Exch. Assurance., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). When specific jurisdiction is asserted,[5] the minimum-contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *See id.* To support the exercise of specific jurisdiction, the plaintiff's causes of action must arise from or relate to the nonresident defendant's forum contacts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007). This means that a substantial connection must exist between the nonresident defendant's forum contacts and the operative facts of the litigation. *Id.* at 585. The operative facts are those facts that would be the focus of a trial on the merits. *Id.* at 575. We must analyze the degree of connectedness between the

---

[5] Appellees did not assert that Texas has general jurisdiction over Rolnick. *Cf. BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 787 (Tex. 2002) (general jurisdiction may only be exercised over nonresident defendant when his contacts in forum are continuous and systematic, which is "a more demanding minimum contacts analysis than for specific jurisdiction" (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)).

5

forum contacts and the litigation to determine whether the operative facts of the litigation focus on those contacts. *See id.* at 584-85.

The relevant jurisdictional facts that would be the focus of a trial on the merits of the alleged legal malpractice here would involve whether and how the defendants breached their duties to Plaintiffs—in other words, how the attorneys exercised their legal judgment and whether they failed to act as a reasonably prudent attorney would. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (legal-malpractice action requires proof of four elements: (1) attorney owed plaintiff duty, (2) attorney breached duty, (3) breach proximately caused plaintiff's injuries, and (4) damages occurred); *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989) (attorney malpractice action in Texas is based on negligence, inquiring whether reasonably prudent attorney in same or similar circumstance could have made challenged decision).

Texas courts have held that where—as here—the underlying case involves a legal-malpractice action, the focus for personal-jurisdiction purposes should be on where the attorneys performed the legal work at issue. *See Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered*, 364 S.W.3d 359, 365-66 (Tex. App.—Eastland 2012, no pet.) (holding that trial court did not have specific personal jurisdiction over nonresident attorneys who created defined benefit plans for Texas company at request of attorneys' Connecticut client and sent plans to Texas company because "operative facts of the underlying litigation, as to the allegations against [nonresident attorneys], will focus primarily on [attorneys'] creation of the defined benefit plans, not the transmission of those plans to Texas"); *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484-85 (Tex. App.—Dallas 2010, pet. denied) (holding that trial court did not

6

have specific personal jurisdiction over Washington law firm where legal work at issue was performed in Washington or Idaho and relevant communications were made from there to Texas); *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (holding that trial court did not have specific personal jurisdiction over New York law firm where attorney created opinion letter in New York and sent it to Texas); *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that trial court did not have specific personal jurisdiction over Indiana lawyer where lawyer exercised legal judgment and formed legal opinion in Indiana and relevant communications were made from there to Texas). In light of this guidance, we consider Rolnick's contacts.

### Rolnick's contacts with Texas

The operative facts of the underlying litigation will focus on the various attorneys' legal judgment and acts and omissions in accordance therewith. Rolnick exercised his legal judgment in Florida, just as the lawyer in *Markette* exercised his legal judgment in Indiana and the doctor in *Brocail* exercised his medical judgment in Michigan. *See Markette*, 240 S.W.3d at 468; *Brocail v. Anderson*, 132 S.W.3d 552, 563 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (tort occurred in exercise of medical judgment in prescribing course of physical therapy in Michigan, not from communication of that prescription to provider in Texas). While Rolnick may have communicated his legal judgment to the attorneys in Texas, his allegedly tortious conduct was not the communication itself of his legal judgment but alleged acts and omissions in implementing that judgment. *Cf. Tempest Broad. Corp. v. Imlay*, 150 S.W.3d 861, 875 (Tex. App.—Houston [14th Dist.] 2004,

7

no pet.) (in action alleging tortious interference, fraud, and conspiracy against attorneys but not legal malpractice, representations to Texas themselves were actionable conduct and, therefore, sufficient to constitute minimum contacts); *Rowland & Rowland, P.C. v. Texas Emp'rs Indem. Co.*, 973 S.W.2d 432, 435-36 (Tex. App.—Austin 1998, no pet.) (tort alleged against attorneys was not legal malpractice but misrepresentation, in form of communication to Texas resident). The operative facts at a trial on the merits will focus on the legal advice that Rolnick gave and on his professional omissions, not on the communication of that advice or on the role that he allegedly played in "quarter-backing" the larger transaction of the sale of Sight's My Line's assets.

The crux of the alleged malpractice is not that Rolnick and the other law firms filed a UCC-1 in Texas but, rather, that they *failed* to file a UCC-1 in Delaware and thereby perfect Plaintiffs' security interest, causing damages. This alleged failure or omission on the part of Rolnick did not happen in Texas but rather, in Florida, where he allegedly made the decision to not file in Delaware. The connection between his Texas contacts—a few phone calls and e-mails to Ray—and the operative facts of the litigation (whether his legal representation was negligent) is tenuous. The

multiple iterations and characterizations of Rolnick's Texas contacts that appellees reference[6] are insufficient to constitute "minimum contacts."

Based on the undisputed evidence, we conclude that the evidence is legally insufficient to support the trial court's implied finding that it could exercise personal jurisdiction over Rolnick based on specific jurisdiction and hold that he negated the bases for personal jurisdiction alleged by appellees.[7] Because we determine that appellant does not have sufficient

---

[6] Apart from evidence already cited in this opinion, appellees collectively cite the following additional evidence to establish Rolnick's minimum contacts with Texas:

- Rolnick was lead counsel for the entire transaction and ultimately "responsible" for ensuring that it complied with Texas law.

- The sale involved assets located in Texas.

- Rolnick acted on his legal judgment in Texas by "issu[ing] a directive" to Ray to file the UCC-1 in Texas.

- Rolnick formed Sight's My Line knowing that its purpose was to acquire Texas assets.

- Ray believed that he was "retained" by Rolnick.

- Rolnick single-handedly managed the closing of the transaction and made the decision to record the UCC-1 in Texas.

- Rolnick compiled the list of collateral and sent it with the UCC-1 to Ray in Texas.

- Rolnick had an "active conversation" with Ray about where to file the UCC-1.

[7] Some of the appellees argue that Ray and his law firm were agents of Rolnick and that he, by virtue of this relationship, had sufficient minimum contacts with Texas. There is no evidence in the record of an agency relationship and, therefore, we do not address the merits of this theory of exercising jurisdiction over Rolnick. *See Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (while agent's contacts may be imputed to principal

minimum contacts to establish jurisdiction in Texas because his Texas conduct is not substantially connected to the operative facts of the litigation, we do not reach the question of whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

### Unsworn special appearance

Appellees also argue that the trial court did not err in denying Rolnick's special appearance because it was unsworn, despite the fact that it was accompanied by an affidavit verifying the factual statements contained therein. *See* Tex. R. Civ. P. 120a (special appearance "shall be made by sworn motion filed prior to . . . any other plea, pleading or motion"); *Casino Magic Corp. v. King*, 43 S.W.3d 14, 18 (Tex. App.—Dallas 2001, pet. denied) (Rule 120a requires strict compliance and, therefore, trial court does not err in denying unsworn special appearance.). More recent caselaw from the supreme court and our sister courts, however, leads us to conclude that such deficiency in verification was cured by an attached affidavit and/or waived by appellees under these circumstances.[8] *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 730-31 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that affidavit attached to unsworn

---

to establish minimum contacts, agency will not be presumed, and party asserting relationship has burden of proving it). For the same reason, we reject appellees' argument that Rolnick "ratified" the actions of the Texas attorneys so as to create an agency relationship. *See Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 552 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (absent an authorized or apparent agency relationship, principal may nonetheless subject himself to jurisdiction of foreign forum if he ratifies conduct of purported agent by accepting benefits of agent's services as direct result of agent's efforts).

[8] Appellees did not object to the unverified special appearance. *See Haddad v. ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *2 (Tex. App.—San Antonio Apr. 28, 2010, no pet.) (mem. op.) (it is "axiomatic that any complaint that a special appearance is not verified must be brought to the trial court's attention to give the moving party an opportunity to cure the defect").

special appearance sufficiently verified special appearance where facts stated in special appearance were sworn to in affidavit); *Haddad v. ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *2 (Tex. App.—San Antonio Apr. 28, 2010, no pet.) (mem. op.) (same); *see also Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 308 (Tex. 2004) (holding that party did not waive special appearance by failing to properly verify special appearance; any defects in proof of special appearance go to merits rather than waiving ability to challenge jurisdiction); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998) (unverified special appearance does not concede jurisdiction and may be amended any time before defendant makes general appearance).  We hold that, to the extent that the trial court denied Rolnick's special appearance on the ground that it was unverified, the trial court erred.

## CONCLUSION

We sustain appellant's sole issue, reverse the trial court's order denying his special appearance, and render judgment dismissing the claims against him for want of personal jurisdiction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Rendered

Filed:   December 22, 2015

11