

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00393-CV

_____

IN RE SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Relator

---

Original Proceeding
67th District Court of Tarrant County, Texas
Trial Court No. 067-325026-21

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Real party in interest The Harold E. Riley Foundation sued Relator Skadden, Arps, Slate, Meagher & Flom, LLP. Skadden filed a special appearance. The Foundation moved to compel production of certain documents, and in turn, Skadden moved for protection. The trial court granted the Foundation's motion to compel and denied Skadden's motion for protection.

Skadden seeks mandamus relief against that order. Because the trial court authorized discovery exceeding what is reasonably calculated to lead to evidence relevant to the special appearance, we conditionally grant Skadden's petition.

### Background

Skadden is a law firm organized in Delaware with its principal office located in New York.[1] The Foundation is a Texas nonprofit that exists entirely for the benefit of Baylor University and Southwest Baptist Theological Seminary.

In August 2020, the Foundation's then-trustees contacted Skadden in New York and hired it to file a lawsuit in Colorado on the Foundation's behalf. That suit involved the Foundation's control rights over a Colorado corporation.

In September 2020, Baylor and the Seminary sued the Foundation in the 67th District Court of Tarrant County. To defend that suit, the Foundation hired Thompson & Knight LLP, a Texas law firm. Although Skadden did not represent the

---

[1]Skadden has offices in numerous cities, including in Houston, Texas.

Foundation in that case, Skadden communicated with attorneys at Thompson & Knight about it.

In February 2021, Baylor and the Seminary settled with the Foundation, the fallout of which was that Baylor and the Seminary gained control of the Foundation.[2] According to Skadden, its engagement letter with the Foundation provided that a change of control automatically terminated Skadden's representation. Skadden thus informed the Foundation that its representation had ended in February 2021 and asked the Foundation for a final payment of some $94,000 in outstanding legal fees. This amount was in addition to the approximately $2.5 million that the Foundation had already paid Skadden to represent it in the Colorado lawsuit.

The Foundation asked Skadden for a copy of its entire client file to scrutinize Skadden's representation and its bills. But Skadden balked: "[T]he request is currently broader than what [the Foundation] agreed would constitute its Client File in the engagement letter, dated August 23, 2020 . . . , including that it is not entitled to Skadden Work Product, which is owned by the Firm."[3] In the same response, Skadden again asked for payment of its outstanding legal fees.

---

[2]Various power struggles over the Foundation after its founder had died are not relevant here.

[3]Both "Client File" and "Work Product" were defined terms in the engagement letter.

In May 2021, the Foundation sued Skadden in Tarrant County for a declaration that it was entitled to everything in the client file, including Skadden's internal correspondence and work product. It also alleged that Skadden had overbilled it.[4] Skadden filed a special appearance and, subject to that special appearance, a motion to change venue to Harris County, where Skadden has a Texas office.

In late June, the Foundation served a document request to which Skadden—claiming that the request went far beyond any discovery needed to resolve the threshold jurisdictional issue—responded with a motion for protection. In October 2021, the Foundation moved to compel production and, a month later, responded to Skadden's motion for protection. Skadden responded to the Foundation's motion to compel.

After a hearing, the trial court signed an order on November 11, 2021, granting the Foundation's motion to compel and denying Skadden's motion for protection. Skadden's mandamus followed.

---

[4]In the Foundation's mandamus response, it summarized its suit against Skadden as follows: "The underlying lawsuit is about the substance of Skadden's representation of the Foundation and its charging of exorbitant and wasteful fees, in part to benefit individual, self-dealing Foundation Trustees [who] were not its clients [and who] were unqualified and conflicted as to the Foundation – Skadden's true client."

## Discussion

### I. Mandamus

Mandamus relief is proper only to correct a clear abuse of discretion when there is no "adequate remedy at law, such as a normal appeal." *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 304 (Tex. 2016) (orig. proceeding) (quoting *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984) (orig. proceeding)). When the benefits of mandamus outweigh its detriments, appellate courts must consider whether the appellate remedy is adequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). A clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Moreover, mandamus is appropriate to correct "[a]n order compelling discovery that is well outside the proper bounds." *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

### II. Special Appearances

A nonresident defendant may file a special appearance to object to the trial court's jurisdiction on the ground that the defendant "is not amenable to process issued by the courts of this State." Tex. R. Civ. P. 120a(1). The purpose of a special appearance is to allow a nonresident defendant to attack the trial court's jurisdiction over it without subjecting itself to the jurisdiction of the court generally. *C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791, 793 (Tex. App.—Fort Worth 1984, no writ).

The plaintiff bears the initial burden of pleading allegations sufficient to show the proper exercise of jurisdiction. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). The burden then shifts to the defendant to negate all the alleged jurisdictional bases. *Id.*

## III. Special Appearances and Discovery

Under Rule 120a, a defendant who files a special appearance is entitled to have the issue of personal jurisdiction heard and decided before any other matter; thus, discovery is limited to matters directly relevant to the special appearance. *In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014) (orig. proceeding); *Stanton v. Gloersen*, No. 05-16-00214-CV, 2016 WL 7166550, at *6 (Tex. App.—Dallas Nov. 30, 2016, pet. denied) (mem. op.) (citing *Doe*, 444 S.W.3d at 608). A court should not reach the merits of the case when deciding a special appearance. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791–92 (Tex. 2005); *In re Cho*, No. 02-17-00254-CV, 2017 WL 3911002, at *2 (Tex. App.—Fort Worth Sept. 7, 2017, orig. proceeding) (mem. op.). To allow general discovery against a defendant over which the trial court may not have personal jurisdiction denies the defendant the protection that Texas procedure affords it. *Doe*, 444 S.W.3d at 608.

## IV. Personal Jurisdiction

To issue a binding judgment, a court must have both subject-matter jurisdiction over a case and personal jurisdiction over the parties. *Luciano*, 625 S.W.3d at 7–8. Personal jurisdiction involves a court's ability to bind a party to its judgment. *Id.* at 8.

6

Whether a court may exercise power over a party is a legal question, which we review de novo; but resolving this question of law may require a court to decide questions of fact. *Id.* When, as here, the trial court does not issue findings of fact, we presume that all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal. *Id.*

A defendant's contacts with the forum may authorize the court to exercise either general or specific jurisdiction. *Id.* A court has general jurisdiction over a nonresident defendant whose affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State. *Id.* By contrast, specific jurisdiction covers defendants who are less intimately connected with a State. *Id.* The minimum contacts necessary for specific jurisdiction are established if (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum state and (2) the suit arises out of or relates to the defendant's contacts with the forum. *Id.* at 8–9.

The due-process touchstone for specific jurisdiction is "purposeful availment." *Michiana*, 168 S.W.3d at 784. "Purposeful availment" has three aspects:

- First, only the defendant's contacts with the forum count—"purposeful availment" ensures that a defendant will not subject itself to jurisdiction based solely on another party's or a third person's unilateral activity.

- Second, the acts relied on must be purposeful rather than fortuitous—a defendant who reaches out beyond one state and creates continuing relationships and obligations with citizens of another state is subject to the latter's jurisdiction in suits based on those activities; by contrast, a defendant

will not subject itself to jurisdiction based solely on random, isolated, or fortuitous contacts.

- Third, the defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction—jurisdiction is premised on the notion that a nonresident impliedly consents to suit if it invokes the benefits and protections of a forum's laws.

*Luciano*, 625 S.W.3d at 9–10; *Michiana*, 168 S.W.3d at 785.

Because neither party argues that general jurisdiction exists, we consider only specific jurisdiction. *See Luciano*, 625 S.W.3d at 9.

## V. Application

### A. Abuse of Discretion

The mere existence of an attorney-client relationship, without more, does not confer personal jurisdiction over a nonresident attorney in the forum state. *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484 (Tex. App.—Dallas 2010, pet. denied), *overruled on other grounds by Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 127–29, 127 n.8 (Tex. App.—Dallas 2021, no pet.). Telephone calls and correspondence directed at the forum state are generally insufficient. *Id.* Work performed outside the state is also insufficient. *Id.*; *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468–69 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (op. on reh'g).

Attorneys from Skadden's Delaware and New York offices worked on the Colorado lawsuit. Skadden contends that its attorneys performed that work in

8

Delaware, New York, or Colorado. As noted, these attorneys also communicated with Thompson & Knight about the Texas litigation.

The Foundation sought (and the trial court allowed) discovery of Skadden's Delaware and New York attorneys' internal communications and analyses primarily about the Texas litigation and, to a more limited extent, about the Colorado litigation, with the latter targeting Skadden's communications and analyses about whether the Colorado litigation presented a conflict of interest between the Foundation and its former trustees:

(1) Internal communications, memoranda, and documents related to Skadden . . . attending and assisting with deposition preparation of Foundation witnesses for their Texas depositions in the Baylor/[Seminary] Litigation, and subsequent review of the deposition transcripts;

(2) Internal communications, memoranda, and documents related to Skadden['s] research into the role of Foundation directors and application of Delaware law to issues arising in the Texas litigation;

(3) Internal communications, memoranda, and documents related to Skadden['s] research into any conflicts of interest in Foundation directors placing themselves on the Board of [the Colorado company];

(4) Internal communications, memoranda, and documents related to Skadden['s] research into Director Qualification Memorandum prepared by Skadden . . . for use in the Texas litigation;

(5) Internal communications, memoranda, and documents related to Skadden['s] research into Cost Bullets Memorandum to be used in the Texas litigation; and

(6) Internal documents reflecting its preparation for (including developing strategies with Texas counsel), attendance at, and subsequent review of the transcripts of any of the hearings

9

conducted in the Baylor/[Seminary] Litigation [that] was pending in [Tarrant County].

The Foundation asserts in response to Skadden's mandamus arguments that the subject matter of the communications and analyses are relevant: "The internal communications sought by the Foundation will likely reveal the breadth of Skadden's involvement and its purposeful availment in participating in the . . . Baylor/[Seminary] [Tarrant County] Litigation." The Foundation adds, "It is apparent that Skadden failed to produce many documents relevant to its contacts with Texas—such as internal communications related to . . . the prior Baylor/[Seminary] Litigation." Skadden's mandamus reply synthesizes its argument differently:

> Skadden has already produced *every* communication with [the Foundation] and the Thompson & Knight lawyers, as well as with lawyers who represented the former directors of [the Foundation]. In contrast, the trial court's order compels the production of Skadden's wholly internal communications and documents that were never sent to anyone who appeared in the parallel Texas litigation. [Footnotes omitted.]

As Skadden argued, "[i]nternal communications that were not sent to [the Foundation] or its lawyers at Thompson & Knight cannot reveal any new contacts with Texas. That information instead relates to the merits of the dispute." We agree with Skadden.

Because the Skadden attorneys worked out of the Delaware and New York offices and performed some work in Colorado, it follows that the discovery the Foundation seeks relates to activities performed in Delaware, New York, or Colorado.

For specific-jurisdiction purposes, the Foundation's requested discovery cannot help it establish personal jurisdiction over Skadden. Regardless of the subject matter of the internal communications, they neither originated in Texas nor were they directed toward anyone in Texas. *See Michiana*, 168 S.W.3d at 791–92 ("[W]e disapprove of those opinions holding that . . . specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves.");[5] *Markette*, 240 S.W.3d at 469 ("[T]he supreme court has rejected the notion of focusing on where a defendant directed a tort or where the effects of tortious conduct will be felt in determining specific jurisdiction.").[6] And the work that Skadden performed occurred in jurisdictions other than Texas. *See Ahrens & DeAngeli, P.L.L.C.*, 318 S.W.3d at 479–80, 484, 486–87;[7] *Markette*, 240 S.W.3d at 469 ("[The Indiana attorney's] judgment, which will be the focus of the underlying litigation, was exercised in Indiana . . . .").

---

[5]In *Michiana*, the plaintiff alleged tort, contract, and statutory claims. 168 S.W.3d at 791.

[6]In *Markette*, the plaintiff alleged legal malpractice "and many related claims, including fraud, negligent misrepresentation, breach of fiduciary duty, and breach of contract." 240 S.W.3d at 466.

[7]In *Ahrens & DeAngeli*, the record showed that attorneys with places of businesses in Washington and Idaho performed legal work in Washington or Idaho, not Texas, on behalf of their Texas client and that the attorneys communicated with their Texas client from Washington or Idaho. The court concluded that the Washington and Idaho attorneys, their Washington law firm, and a corporation that the attorneys had formed with its place of business in Idaho had negated the existence of contacts between each of them and Texas and that the trial court had thus improperly exercised personal jurisdiction over them. 318 S.W.3d at 479–80, 484, 486–87.

The Texas Supreme Court's recent case, *In re Christianson Air Conditioning & Plumbing, LLC*, does not change our analysis. No. 20-0384, 2022 WL 333367 (Tex. Feb. 4, 2022) (orig. proceeding). That case dealt with discovery relevant to personal jurisdiction that overlapped with discovery relevant to the merits. *Id.* at *4. The question was whether the overlapping merits discovery justified denying the personal-jurisdiction discovery, with the supreme court observing that "[n]othing in Rule 120a or our cases suggests that jurisdictional discovery must relate exclusively to the jurisdictional question, as the court of appeals held. To the contrary, we have indicated that jurisdictional discovery may overlap with merits issues in certain circumstances." *Id.* at *3. In contrast, the Foundation's discovery will not lead to anything relevant to personal jurisdiction, nor do we purport to hold that the Foundation is limited to discovery "exclusively" related to jurisdiction.

Another recent case to which the Foundation has called our attention, *Ringham v. Bernstein*, is also distinguishable. No. 05-21-00526-CV, 2022 WL 68221 (Tex. App.—Dallas Jan. 5, 2022, no pet. h.). There, the out-of-state defendants—who were appealing the denial of their special appearances—specifically targeted a Texas resident as their client. *Id.* at *5. Here, the Foundation specifically sought out services from Skadden offices outside Texas.

Because the trial court authorized discovery exceeding what was reasonably calculated to lead to evidence relevant to the special appearance, we hold that the trial

court abused its discretion by granting the Foundation's motion to compel and by denying Skadden's motion for protection.

## B. Inadequate Remedy at Law

The Foundation next argues that we should deny mandamus relief because Skadden has an adequate remedy by interlocutory appeal after the trial court rules on Skadden's special appearance: "Finally, Skadden is not entitled to mandamus relief because it has an adequate remedy at law through a possible interlocutory appeal in the event it believes the trial court incorrectly denies Skadden's special appearance." We disagree.

For good reason, Skadden has not asked us to review the trial court's ruling on its special appearance—the trial court has not yet ruled on it. Rather, Skadden has asked us to review the trial court's discovery order in the context of its special appearance.

Mandamus lies if a trial court permits a plaintiff to engage in discovery unrelated to a defendant's pending special appearance. *See Cho*, 2017 WL 3911002, at *2 (citing *Doe*, 444 S.W.3d at 608). The trial court's order might well advance the Foundation's merits discovery, but it will not advance resolving Skadden's special appearance. Mandamus is appropriate to correct an order compelling discovery that is well outside the proper bounds. *Am. Optical Corp.*, 988 S.W.2d at 713.

## Conclusion

We hold that the trial court abused its discretion by granting the Foundation's motion to compel and by denying Skadden's motion for protection and that Skadden has no other adequate remedy at law. We conditionally grant Skadden's petition and direct the trial court to:

- vacate its November 11, 2021 order directing Skadden to produce the documents identified in categories (1) through (6) above pending the special appearance;

- grant Skadden's motion for protection of these documents pending the special appearance; and

- deny the Foundation's motion to compel production of these documents pending the special appearance.[8]

Because we are confident that the trial court will comply with these directives, the writ will issue only if the trial court fails to do so.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: February 18, 2022

---

[8]The order also required Skadden to produce a witness for a deposition to address personal jurisdiction. Skadden does not request any relief from that portion of the order.